IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEPHEN A. HENRY, J-95418,

    Plaintiff,

v.

PRISON MEDICAL PROVIDERS, et. al.,

    Defendants.

No. C 13-0201 CRB (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL**

(Dkt. 38 & 54)

Plaintiff Stephen A. Henry, a prisoner at the Correctional Training Facility, filed a pro se complaint under 42 U.S.C. § 1983 alleging that, while he was at Salinas Valley State Prison (SVSP), Prison Medical Providers (PMP) doctors M. Sepulveda and E. Bridgnell denied his primary doctor's referrals to see an ear, nose and throat (ENT) specialist, which ultimately caused him to lose hearing in one of his ears. Plaintiff claims that defendants' conduct amounted to deliberate indifference to serious medical needs under § 1983 and to state law negligence under 28 U.S.C. § 1367. Per order filed on May 21, 2013, the Court found that plaintiff's allegations, liberally construed, present arguably cognizable claims for Eighth Amendment deliberate indifference to serious medical needs under § 1983 and for California state law negligence under the Court's supplemental jurisdiction under § 1367, and ordered the United States Marshal to serve defendants doctors M. Sepulveda and E. Bridgnell.[1]

---

[1] The Court dismissed PMP and chief physician Dr. D. Bright because plaintiff in no way connected them to his allegations of wrongdoing, and it is well established that there is no respondeat superior liability under § 1983, i.e., there is no liability solely because one is responsible

Defendants now move for summary judgment on the Eighth Amendment deliberate indifference claim and for dismissal of the state law negligence claim. As to the motion for summary judgment, governed by Federal Rule of Civil Procedure 56, defendants argue that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Defendants specifically argue that their initial denials of a referral to an ENT specialist did not amount to deliberate indifference and did not aggravate plaintiff's condition. They also argue that they are entitled to qualified immunity. As to the motion for dismissal, governed by Federal Rule of Civil Procedure 12(b)(6), defendants argue that plaintiff's state law negligence claim is barred by his failure to comply with the California Tort Claims Act.[2]

## UNDISPUTED FACTS

Plaintiff first reported experiencing ringing, buzzing and pain in his ears on February 2, 2010, while at SVSP. Compl. (dkt. 1) ¶ 1. He saw a nurse that same day and, within two days, was seen by a doctor. Id. ¶ 4. The doctor prescribed plaintiff a solution that would "clean" his ears, but despite the treatment, the ringing did not subside. Id. ¶ 5.

Plaintiff saw Dr. Mack, his primary care doctor at SVSP, on February 23, 2010. Id. ¶ 6. Dr. Mack diagnosed plaintiff with tinnitus, Mot. (dkt. 38) at 5 ¶ 9, and submitted a Request for Services (RFS) to upper level staff,[3] requesting to have plaintiff see an in-house audiologist. Compl. ¶ 7. The RFS form was designed to permit requesting doctors to denote whether the requested service was emergent, urgent or routine. Mot. at 4 ¶ 4. Dr. Mack

---

for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

[2] Defendants also move to dismiss any claims against them in their official capacities. Absent state consent, the Eleventh Amendment bars from the federal courts suits against a state by its own citizens or citizens of any foreign state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237-38 (1985). This immunity extends to suits against state officials sued in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985). Here, because neither the State of California nor defendants have consented to the suit, the court finds that plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment.

[3] The chief medical officer or chief physician review each RFS and, in so doing, typically use an evidence-based medical guideline system known as "InterQual" to determine whether the patient requires additional expert care. Mot. at 4 ¶ 5. Because InterQual does not have "strict guidelines for a referral to an ENT specialist," it is not relevant here. Sepulveda Decl. (dkt. 40) ¶ 12.

2

classified this request as "routine." Id. at 5 ¶ 10.  Dr. Bright, chief physician at SVSP, approved Dr. Mack's RFS for an in-house audiologist on February 26, 2010.  Compl. ¶ 8.

Plaintiff was seen by the in-house audiology department on March 5, 2010.  Compl. ¶ 9.  The audiologist, Dr. Honda, told plaintiff that he needed to see an ENT specialist and indicated the same to Dr. Mack by thrice underlining "ENT" in the Findings section of the original RFS.  Id.; Opp'n (dkt. 50) at 6; Bridgnell Decl. (dkt. 39) Ex. B.  When plaintiff next followed-up with Dr. Mack on April 15, 2010, the primary care doctor followed the audiologist's recommendation and made out a new RFS, requesting that plaintiff be seen by an ENT specialist.  Compl. ¶ 10.

Defendant Dr. Sepulveda, the former chief medical officer and chief medical executive at SVSP, denied Dr. Mack's ENT referral on April 20, 2010.  Id. ¶ 11.  Dr. Sepulveda declares that he denied the referral because he believed "the doctor's clinical management was incomplete and [he] wanted more evidence of the necessity" for an ENT specialist.  Sepulveda Decl. (dkt. 40) ¶ 13.  Specifically, Dr. Sepulveda wanted plaintiff to undergo a magnetic resonance imaging (MRI) scan to rule out any serious medical condition, such as tumors, that could cause hearing loss.  Id.  Defendants' exhibits show that Dr. Mack again categorized the request as "routine" and did not mention the audiologist's concurring recommendation.  See id., Ex. A.  Plaintiff filed a grievance appealing Dr. Sepulveda's denial on June 13, 2010.  Mot. at 6 ¶ 16.  Plaintiff first reported loss of hearing in his left ear on that grievance form.  Compl. ¶ 12.

Meanwhile, continuing to experience ringing in both ears and new hearing loss in his left ear, plaintiff returned to Dr. Mack on July 15, 2010.  Id. ¶ 13.  Dr. Mack made out a second "routine" RFS, again requesting a referral to an ENT specialist.  Id.  This time, defendant Dr. Bridgnell, acting as chief physician, reviewed the request and independently denied it on July 22, 2010, recommending instead "a trial of medical therapy and a more complete medical work-up" before plaintiff visited an ENT.  Compl. ¶ 14; Bridgnell Decl. ¶ 20.  Dr. Bridgnell declares that he typically prescribes Xanax, Ativan or other anti-depressants to treat tinnitus.  Bridgnell Decl. ¶ 20.

3

1    Plaintiff returned to Dr. Mack on September 13, 2010.  Compl. ¶ 17.  At that point,
2 plaintiff learned that Dr. Sepulveda had reviewed plaintiff's appeal and had decided to
3 reverse course and authorize plaintiff to see an ENT specialist.  Id.  Dr. Sepulveda explained
4 that he changed his opinion because both Dr. Mack and the audiologist insisted that plaintiff
5 be seen by an ENT specialist.  Sepulveda Decl. ¶ 16.  Dr. Sepulveda formally authorized
6 plaintiff to see an ENT specialist on September 21, 2010.  Id. ¶ 17.

7    Plaintiff saw Dr. Nowak, an ENT specialist, on October 22, 2010.  Compl. ¶ 20.  Dr.
8 Nowak found that plaintiff's mixed hearing loss was attributable to either retrocochlear
9 pathology or otosclerosis – a hearing loss that occurs over time and is usually due to
10 advancement in age.  Mot. at 7 ¶ 20.  He ordered an MRI to rule out the possibility of
11 retrocochlear pathology or a more serious illness and, in the meantime, prescribed plaintiff a
12 hearing aid to address his hearing loss symptoms.  Id. at 7-8 ¶¶ 20-21.  Dr. Nowak also found
13 that plaintiff's tinnitus was attributable to temporomandibular joint syndrome, or grinding of
14 the teeth, and prescribed a night guard.  Id.

15    Plaintiff presented for an MRI on December 3, 2010.  Compl. ¶ 21.  The MRI ruled
16 out retrocochlear pathology, Bridgnell Decl., Ex. M, but found that plaintiff also suffered
17 from "opacification" or cloudiness in his left mastoid air cells.  Id., Ex. L.  The radiologist,
18 Dr. Duesdisker, noted that the opacification could "come into play for symptoms of hearing
19 loss and tinnitus."  Id., Ex. L.  Dr. Duesdisker recommend that Plaintiff also receive a CT
20 scan – a request that Dr. Sepulveda subsequently denied.  Id.; Opp'n at 7.

21    Plaintiff followed-up with Dr. Nowak on December 30, 2010.  Bridgnell Decl., Ex. M.
22 Dr. Nowak concluded that plaintiff suffered from unilateral mixed hearing loss, tinnitus and
23 otosclerosis.  Id.  Dr. Nowak did not change his initial treatment plan, but reiterated his initial
24 request for a hearing aid.  Id.  Although plaintiff first declined the hearing aid, due in part to

4

its cost of $470.00, he eventually ordered and received the hearing aid on May 4, 2011. See Compl. ¶ 25; Bridgnell Decl., Exs. P, Q, R.[4]

## DISCUSSION

A.    Standards of Review

     1.    Motion for Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Id. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of

---

[4] Plaintiff filed a motion for transmission of records (dkt. 54) in response to defendants' argument that plaintiff did not properly authenticate the documents attached to his declaration. See Reply (dkt. 53) at 1-2; see Henry Decl. (attached at dkt. 50). Although plaintiff did not authenticate the documents attached to his declaration, defendants' argument is moot because plaintiff's declaration largely refers to the same facts and evidence that defendants authenticated in the Sepulveda and Bridgnell declarations. The court accordingly denies plaintiff's motion (dkt. 54) as moot.

5

1  fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to
2  return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to
3  make this showing, "the moving party is entitled to judgment as a matter of law." Celotex,
4  477 U.S. at 323.

        2.      Motion to Dismiss

6          A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief
7  can be granted tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d
8  1191, 1199–1200 (9th Cir. 2003). To survive a Rule 12(b)(6) motion to dismiss, the
9  complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 556
10 U.S. 662, 663 (2009). A claim has "facial plausibility" when the pleaded factual allegations
11 "allow the court to draw the reasonable inference that the defendant is liable for the
12 misconduct alleged." Id. The court must accept as true all material allegations in the
13 complaint, but it need not accept as true "legal conclusions cast in the form of factual
14 allegations if those conclusions cannot be reasonably drawn from the facts alleged." Clegg
15 v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Review is limited to the
16 contents of the complaint, including documents physically attached to the complaint or
17 documents the complaint necessarily relies on and whose authenticity is not contested. Lee
18 v. Cnty. of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). The court may also take judicial
19 notice of facts that are not subject to reasonable dispute. Id.

20 B.     Analysis

21      Defendants move for summary judgment on plaintiff's Eighth Amendment deliberate
22 indifference claim and for dismissal of plaintiff's state law negligence claim. The court will
23 address the two motions in that order.

24         1.      Motion for Summary Judgment on Eighth Amendment Claim

25         Defendants argue that they are entitled to summary judgment on plaintiff's
26 Eighth Amendment claim because the undisputed facts show that their initial denials of a
27 referral to an ENT specialist did not amount to deliberate indifference and did not aggravate
28 plaintiff's condition. They also argue that they are entitled to qualified immunity.

6

A prison official violates the Eighth Amendment's proscription against cruel and unusual punishment when he acts with deliberate indifference to the serious medical needs of a prisoner. Farmer v. Brennan, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a prisoner plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To meet the objective standard, the delay or failure to treat a prisoner's medical condition must result in the "'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To meet the subjective standard of deliberate indifference, a prison official must know that a prisoner faces a substantial risk of serious harm and disregard that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837. The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. Mere negligence, or even gross negligence, is not enough. Id. at 835-36 & n.4.

In order to prevail and recover damages against any of the defendants, plaintiff also must prove that the defendant's deliberate indifference was the "actual and proximate cause" of the deprivation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." Id. at 633. To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff instead must "set forth specific facts" showing how each individual defendant actually and proximately caused the deprivation of his or her federal rights. Id. at 634.

       a.     Dr. M. Sepulveda

The undisputed facts show that Dr. Sepulveda denied Dr. Mack's initial request for a "routine" referral for plaintiff to see an ENT specialist because Dr. Sepulveda found that Dr. Mack's "clinical management was incomplete" and because Dr. Sepulveda "wanted more evidence of the necessity" for an ENT specialist. Sepulveda Decl. ¶ 13. Dr.

7

1  Sepulveda specifically wanted plaintiff to undergo an MRI to rule out certain conditions
2  before seeing an ENT specialist.  But after plaintiff appealed Dr. Sepulveda's decision on
3  June 13, 2010 and Dr. Sepulveda learned that both Dr. Mack and the audiologist believed that
4  an ENT referral was in order, Dr. Sepulveda reversed his denial and authorized plaintiff to see
5  an ENT specialist.  And when plaintiff saw the ENT specialist on October 22, 2010, the
6  specialist agreed with Dr. Sepulveda's initial recommendation and ordered that plaintiff
7  undergo an MRI before proceeding further.

8  Under these undisputed facts, no reasonable juror could find that Dr. Sepulveda's
9  initial denial of a referral for plaintiff to see an ENT specialist amounted to deliberate
10 indifference to serious medical needs.  There is no evidence on the record that Dr. Sepulveda
11 denied the referral in conscious disregard of plaintiff's medical condition.  See Farmer, 511
12 U.S. at 837.  Dr. Sepulveda's denial was based on his medical opinion that plaintiff should
13 have an MRI to rule out certain conditions before seeing an ENT specialist.  Plaintiff's
14 pointing to Dr. Mack's and the audiologist's different medical opinion is not enough because
15 a showing of a difference of medical opinion is insufficient, as a matter of law, to establish
16 deliberate indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir.
17 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  In order to prevail on a claim
18 involving choices between alternative courses of treatment, a plaintiff must show that the
19 course of treatment the defendant doctor chose was medically unacceptable under the
20 circumstances and that he chose this course in conscious disregard of an excessive risk to
21 plaintiff's health.  Toguchi, 391 F.3d at 1058.  Plaintiff makes no such showing.  After all, the
22 ENT specialist agreed with Dr. Sepulveda's MRI recommendation and ordered that plaintiff
23 undergo an MRI before proceeding further.

24 Plaintiff argues that the delay in his finally obtaining authorization from Dr.
25 Sepulveda to see an ENT specialist furthered his hearing loss and caused him additional harm.
26 But plaintiff sets forth no evidence in support of this claim.  Although there appears to be a
27 difference of medical opinion as to what caused plaintiff's hearing loss (ENT specialist Dr.
28 Nowak attributed it to otosclerosis, whereas radiologist Dr. Duesdisker suggested that

opacification in plaintiff's left mastoid air cells may have played a role), there is no indication that having referred plaintiff to an ENT specialist in April 2010, rather than September 2010, would have made a difference. There is no evidence whatsoever that this relatively minor delay contributed to plaintiff's hearing loss or caused him additional harm. And, importantly, there is no evidence that the delay was actually and proximately caused by Dr. Sepulveda's deliberate indifference to plaintiff's serious medical needs. See Farmer, 511 U.S. at 837; Leer, 844 F.2d at 634.

Plaintiff suggests that Dr. Sepulveda should have done more to ensure that his recommendation that plaintiff undergo an MRI occurred in a more timely fashion. Perhaps so, but this amounts to no more than a claim for medical malpractice or negligence not cognizable as a constitutional claim under § 1983. See Toguchi, 391 F.3d at 1060-61. Dr. Sepulveda is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law.[5] See Celotex, 477 U.S. at 323.

        b.     Dr. E. Bridgnell

The undisputed facts show that Dr. Bridgnell denied Dr. Mack's second request for a "routine" referral for plaintiff to see an ENT specialist because Dr. Bridgnell believed that plaintiff should undergo "a trial of medical therapy" for his tinnitus and "a more complete medical work-up" before seeing an ENT specialist. Bridgnell Decl. ¶ 20. It is unclear whether Dr. Bridgnell was aware of Dr. Sepulveda's earlier denial, but like Dr. Sepulveda, he disagreed with Dr. Mack's recommended course of treatment and based his denial on his medical opinion that plaintiff should be medically treated for his tinnitus and undergo further tests before seeing an ENT specialist. Plaintiff sets forth no evidence showing that Dr. Bridgnell's recommended course of treatment was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058.

---

[5] Dr. Sepulveda is also entitled to qualified immunity because a reasonable prison doctor could have believed that his conduct was lawful under the circumstances. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001). A reasonable prison doctor could have believed that holding off on a referral to an ENT specialist for plaintiff until after he had an MRI to rule out certain conditions was medically acceptable and not an excessive risk to plaintiff's health.

9

To be sure, Dr. Bridgnell might have done more to ensure that his recommend course of treatment was carried out by Dr. Mack and/or other prison doctors in a timely fashion, as plaintiff suggests. But Dr. Bridgnell's apparent failure to do so amounts to no more than a claim for medical malpractice or negligence not cognizable as a constitutional claim under § 1983. See id. at 1060-61. Dr. Bridgnell is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law.[6] See Celotex, 477 U.S. at 323.

### 2. Motion to Dismiss State Law Negligence Claim

Defendants seek dismissal of plaintiff's state law negligence claim on the ground that the claim is barred by the California Tort Claims Act because plaintiff did not file a claim with the California Victim's Compensation Government Claim Board (Board).

Under California law, the filing of a tort claim in the time and manner prescribed by state law is a prerequisite to the filing of a lawsuit against any state employee or entity. Cal. Gov. Code §§ 905.2, 911.2, 945.4, 950.2; Munoz v. California, 33 Cal. App. 4th 1767, 1776 (1995). The California Tort Claims Act provides the requisites for the filing of a tort claim against state employees and entities. Under the Tort Claims Act, a tort claim against a state employee or entity must be presented to the Board within six months of the accrual of the cause of action. See Cal. Gov. Code § 911.2. Timely claim presentation is not merely a procedural requirement but "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant." California v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1240 (2004). Failure to file a timely claim with the Board accordingly is fatal to a cause of action for negligence or other state tort. See Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992) (citing City of San Jose v. Super. Ct. (Lands Unlimited), 12 Cal. 3d 447, 454 (1974)).

---

[6] Dr. Bridgnell is also entitled to qualified immunity because a reasonable prison doctor could have believed that his conduct was lawful under the circumstances. See Saucier, 533 U.S. at 201-02. A reasonable prison doctor could have believed that holding off on a referral to an ENT specialist for plaintiff until after prison doctors first tried to medically treat plaintiff's tinnitus and conducted further tests was medically acceptable and not an excessive risk to plaintiff's health.

United States District Court
For the Northern District of California

The court may take judicial notice that an authorized custodian of records for the Board conducted a search of the Board's records and found that plaintiff never filed a claim related to his causes of action against defendants. Req. for Judicial Notice (dkt. 41) at 4. See Marsh v. San Diego County, 432 F. Supp. 2d 1035, 1043-44 (S.D. Cal. 2006) (courts may take judicial notice of records and reports of administrative bodies, including Board). Plaintiff concedes that he did not file a claim with the Board, but argues that this is not fatal to his state law negligence claim because the Tort Claims Act does not apply here. Among other things, he argues that the California Department of Corrections and Rehabilitation is not a state entity, that defendants were not acting with express or implied state authority, and that this is a federal § 1983 action rather than a state action. Plaintiff's arguments are without merit. A state tort claim against defendants must comply with the California Torts Claims Act because defendants are state employees under the Act and the claim's joinder with a federal § 1983 action does not compel a different result. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988) (joinder of state tort claim with federal § 1983 action does not insulate state tort claims from claim presentation requirements of California Tort Claims Act). Plaintiff's state law negligence claim must be dismissed. See United States v. California, 655 F.2d 914, 918 (9th Cir. 1980) (state tort claim not presented in accordance with California Tort Claims Act barred from consideration in federal action).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on plaintiff's Eighth Amendment claim and for dismissal of plaintiff's state law negligence claim (dkt. 38) is GRANTED. The clerk shall enter judgment in favor of defendants, terminate all pending motions (see, e.g., dkt. 54) as moot and close the file.

**SO ORDERED.**

DATED:  July 10, 2014

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.13\Henry, S.13-0201.MSJ.final.wpd